1  JACK RUSSO (State Bar No. 1746957)
100 Church Street, 8th Floor
2  New York, NY 10007
Telephone: (650) 327-9800
3  Facsimile: (650) 618-1863
E-mail: jrusso@computerlaw.com

4

5  Attorney for Plaintiff
FRANCES WEBER

6

7                    UNITED STATES DISTRICT COURT

8                    SOUTHERN DISTRICT OF NEW YORK

9

10

FRANCES WEBER, an individual,            Case No.: 13-CV-7437
11
                                         **FIRST AMENDED COMPLAINT FOR:**
12              Plaintiff,               **1. SECURITIES FRAUD;**
                                         **2. CONSTRUCTIVE FRAUD;**
13              v.                        **3. DECEIT;**
                                         **4. NEGLIGENT MISREPRESENTATION;**
14  ARTICLE ONE PARTNERS HOLDINGS, LLC, a **5. BREACH OF CONTRACT;**
    Delaware limited liability company; AOP **6. BREACH OF FIDUCIARY DUTY;**
15  FOUNDERS, LLC, a New York limited liability **7. VIOLATIONS OF NEW YORK LABOR**
    company, CHERYL MILONE, an individual, SYW    **CODE §191(3);**
16  PRIVATE INVESTMENT LLC a Delaware limited **8. BREACH OF WRITTEN**
    liability company, and ALLEGHANY CAPITAL     **EMPLOYMENT CONTRACT;**
17  CORPORATION, a Delaware corporation,     **9. WRONGFUL TERMINATION IN**
                                                 **VIOLATION OF THE FAMILY**
18              Defendants.                       **MEDICAL LEAVE ACT OF 1993, 26**
                                                 **U.S.C. §2601 ET SEQ.;**
19                                       **10. BREACH OF IMPLIED COVENANT OF**
                                             **GOOD FAITH AND FAIR DEALING;**
20                                       **11. AGE DISCRIMINATION**

21                                       **[JURY TRIAL DEMANDED]**

22

23

24

25

26

27

28

## NATURE OF ACTION

1.    In this action, Plaintiff Frances Weber ("Ms. Weber") seeks damages and equitable relief for securities violations, negligent misrepresentations, breaches of fiduciary duty and written contract, and wrongful termination by Defendants Cheryl Milone ("Ms. Milone"), Article One Partners Holdings, LLC ("AOP"), AOP Founders, LLC ("AOP Founders"), jointly and severally, along with Defendants SYW Private Investment LLC ("SYW") and Alleghany Capital Corporation ("Alleghany").  Through deceit and misrepresentations of material facts, Defendants fraudulently induced Ms. Weber, an unaccredited individual investor, to invest over $50,000 in AOP by promising at various times and among other misrepresentations that Ms. Weber would receive a total of 11.2% equity in AOP and AOP Founders.

2.    Ms. Weber also seeks damages on violations of written and oral contracts and New York Labor Code for wrongful termination of her employment with AOP.

## JURISDICTION AND VENUE

3.    This action arises under the Securities Exchange Act of 1934. 15 U.S.C. §78a et seq. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §78aa. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant AOP has its main corporate offices in this District.  28 U.S.C. §1391(b)(2).  The Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Ms. Weber's pendent claims.

## PARTIES

4.    AOP, a limited liability company incorporated in Delaware, is a start-up company in information services, overseeing and managing research and strategic patent analyses.

5.    AOP Founders is a New York limited liability company and a related company to AOP.

6.    Ms. Weber is a New York resident and a founding member of AOP, and served as its Executive Vice President of Research from its founding in November 2007 until December 31, 2011.

7.    Ms. Milone is a New York resident and a founding member, Chief Executive and Managing Member of AOP.  She is also, on information and belief, the controlling member of the

//

1   majority stakeholder in AOP LLC, a Delaware limited liability company, which is itself a stakeholder

2   in AOP.

3         8.    SYW Private Investment, LLC is a Delaware limited liability company, and an investor

4   and member of AOP.

5         9.    Alleghany Capital Corporation is a Delaware corporation, and is an investor and

6   member of AOP.

7   **BACKGROUND FACTS**

8        10.    Between 2007 and 2012, Ms. Milone, AOP and AOP Founders, through their managing

9   member Ms. Milone and other agents, induced Ms. Weber to invest in AOP and AOP Founders at

10   various times, for a total amount of $50,000.

11        11.    In order to induce Ms. Weber, an individual and a non-accredited investor, to make

12   these investments, Ms. Milone, AOP and AOP Founders made certain representations as to the size of

13   the equity stake which Ms. Weber would receive in exchange for her money, including

14       A.    false promises in Spring of 2008 by Ms. Milone that if Ms. Weber joined the company

15                as a founder, she would receive at least a 1% ownership interest in the company;

16       B.    written statements on December 21, 2008 that Ms. Weber was granted an additional

17                100,000 shares in the company in exchange for her work with the company;

18       C.    additional statements in February 2009 that the company required an immediate

19                investment of $50,000 from Ms. Weber to avoid bankruptcy;

20       D.    statements asserting that with the value of this $50,000 investment, Ms. Weber would

21                double her 5.5% interest in the company, separate from the 100,000 shares from

22                December 21, 2008;

23       E.    numerous promises that the AOP LLC would be converted to a corporation;

24       F.    repeated representations that Ms. Weber would be provided with stock certificates for

25                these shares; and

26       G.    representing to Ms. Weber in September 2009 that in order to obtain financing for the

27                company, Ms. Weber would have to convert her ownership to "stock options," and that

28                unless she did so, there would be no way to close the transaction and save the company.

12.     Specifically, in Summer of 2008, as Ms. Weber's time commitment to the company increased substantially, with Ms. Weber spending many more hours working on researching data for pharmaceutical patent cases for use in the AOP investment analytics, Ms. Weber  discussed with Ms. Milone the necessity of increasing Ms. Weber's financial stake in AOP. Ms. Milone told Ms. Weber that she knew that Ms. Weber was essential to the success of AOP and that Ms. Weber would receive a significant stake in the company, or words to that effect. Ms. Weber continued to work on the development of the website and identifying pharmaceutical patent litigation cases as potential investment opportunities.

13.     In Fall 2008, after the successful launch of the AOP website, a project to which Ms. Weber devoted considerable time, Ms. Milone and Ms. Weber continued to have discussions on this promised increased financial stake in AOP.  In December of 2008, Ms. Milone verbally told Ms. Weber that Ms. Weber would be gainfully employed for as long as AOP existed, or words to that effect. She also represented that as Ms. Weber had been so critical to the development of the website, the selection of the studies, and the review of the prior art submissions, that she would personally guarantee that Ms. Weber would have a significant stock position in the company. Ms. Milone stated that as Ms. Weber had not invested money, Ms. Weber could not be labeled a cofounder of Article One but that the company would not have been successfully launched without her. Ms. Milone confirmed her commitment to Ms. Weber in an e-mail dated December 20, 2008 in which she also awarded Ms. Weber 100,000 shares of stock. At the time, Ms. Weber believed that the stock was for Article One Partners. Ms. Weber has subsequently learned that this may be a stock position in a related company, Article One Founders.

14.     On September 14, 2009, in a meeting at Ms. Milone's apartment, Ms. Milone advised Ms. Weber that unless Ms. Weber was able to come up with $50,000 to invest in AOP, the company would be closed and file for bankruptcy. Ms. Milone told Ms. Weber that in return for this investment, Ms. Weber would be assured of gainful employment as long AOP existed and that she would personally double the stock position that Ms. Weber currently had. At that time, Ms. Weber had a 5% stake in AOP. The $50,000 would purchase an additional 1/2%. While Ms. Weber understood that Ms.

//

1    Milone was guaranteeing that the entire 5.5% would be doubled, only the original 5% stake was

2    doubled.

3         15.    In September 2009, returning from San Diego, California, where AOP had presented at

4    a 2009 Exposition, Ms. Milone advised Ms. Weber that the "Angel" group of investors, led by

5    Christopher Wang, would not invest at all unless any stock that Ms. Weber had received was converted

6    to options.  Other than an Employment Agreement (Exhibit 5) which provided a complicated formula

7    for the strike price of such options, Ms. Weber did not receive any paperwork regarding the conversion

8    of stock into options.

9         16.    Ms. Weber told Ms. Milone that options were of no use to her, no matter what the strike

10   price was, as Ms. Weber was certainly not in a financial position to be able to exercise those options.

11   Ms. Milone reiterated that Ms. Weber would always be an employee of AOP, and that Ms. Weber

12   would never be required to exercise the options except as part of an initial placement offering. Ms.

13   Milone's explanation as for why the Angel group was concerned was that they were worried that Ms.

14   Weber would be able to leave the company and still own stock.

15        17.    Ms. Weber proposed that AOP make a counteroffer including employment agreements

16   that had significantly stronger non-compete provisions. Ms. Milone said that this would not be

17   acceptable.  In an emotional discussion, in the taxi on the way to the airport, Ms. Milone asserted Ms.

18   Weber did not understand the concept of a stock option.  Ms. Weber stated that rather, she was

19   concerned she would never be able financially to exercise those options, and thus would never see any

20   value for all the work that she had performed for AOP.

21        18.    Once at the airport gate, Ms. Milone and Ms. Weber sat apart.  However, shortly

22   thereafter, Ms. Milone approached Ms. Weber and stated that she understood Ms. Weber's concerns,

23   but that she had discussed this provision many times with Mr. Wang and that his Angel group was

24   adamant.  However, she again personally committed to Ms. Weber that she would always have

25   employment as an officer of AOP and thus would always be in a financial position to exercise the

26   options.

27        19.    In May of 2010, while AOP was performing due diligence for the investment by

28   Alleghany, Ms. Weber reminded Ms. Milone that she had still not received any documentation for the

1  converted stock options.  Ms. Weber was told that the documentation would be forthcoming, as soon

2  as the Alleghany funding closed.  However, Ms. Weber did not receive any documentation until

3  November 2011.

4       20.     In so doing, Defendants, individually and together, affirmatively misrepresented the

5  value of the ownership interest in AOP and AOP Founders which Ms. Weber would obtain in

6  exchange for capital investment and the investment of her time and resources as a founder, officer, and

7  employee of the companies, and actively concealed or suppressed pertinent facts to prevent Ms. Weber

8  from learning the truth about how the form, percentage, and value of her ownership interest would be

9  affected by the funding agreements and transactions between AOP and AOP Founders, on the one

10  hand, and other investors, including SYW and Alleghany, on the other.

11       21.     By 2011, Ms. Weber and Defendants AOP, AOP Founders, Ms. Milone had entered

12  into binding written and oral agreements, including the written August 7, 2007 Subscription

13  Agreement (**Exhibit 1**), the May 20, 2008 Operating Agreement of Article One Partners, LLC

14  (**Exhibit 2**), the December 23, 2008 grant of 100,000 shares in Article One Founders, LLC by Ms.

15  Milone (**Exhibit 3**), and the Second Amended and Restated Limited Liability Agreement of June 17,

16  2010 (**Exhibit 4**)  (collectively, the "Agreements"), to grant Ms. Weber a combined 11.2%

17  membership interest in AOP and AOP Founders, and an equivalent share of stock in the company

18  when it converts to a corporation, in return for Ms. Weber's investments of money, time, and work as a

19  founder, employee, and investor of AOP and AOP Founders.  True and correct copies of the

20  Agreements are attached as **Exhibits 1-4**.[1]

21       22.     Contrary to these promises and representations, AOP now maintains that Ms. Weber's

22  total equity amounts to a 1% stake in AOP, and none at all in AOP Founders.

23       23.     As well as being an investor in AOP and AOP Founders, Ms. Weber was an employee

24  of AOP from its founding in November 2007.  On January 1, 2009, Ms. Weber and AOP entered into a

25  formal agreement ("Employment Agreement"), attached as **Exhibit 5**, under which AOP employed

26

27    [1] The exhibits to this Complaint have, at various times, been marked "confidential" by AOP or AOP Founders and Plaintiff
believes, therefore, that one or more Defendants may request a protective order in this case by which these documents may

28  be submitted under seal. Accordingly, to allow Defendants the opportunity to make such a request, Plaintiff submits this
pleading without exhibits, and will supplement its filing according to the terms of a protective order, if any, entered in this
matter.

**Computerlaw
Group LLP**
computerlaw.com

1   Ms. Weber as an executive vice president of research. [2] The Employment Agreement was drafted

2   entirely by AOP and is governed by New York Law.  Ex. 5, §11.

3       24.     As an employee of AOP, Ms. Weber was entitled to $125,000 per year of employment,

4   a performance-based bonus, and, in the event of discharge other than for "cause", a severance payment

5   equal to three months' of salary.  Ex. 5, §§2, 3, 7.   Ms. Weber was employed by AOP for four years,

6   and entitled to, at minimum, $500,000 under the Employment Agreement. Once Ms. Weber began

7   receiving a salary in late October 2009, she was granted an increase in salary each subsequent year.

8       25.     In the Spring of 2011, after being excluded from many of the critical executive

9   decisions at AOP, Ms. Weber asked to be allowed to leave the company. AOP agreed that Ms. Weber

10  could leave and asked if Ms. Weber would stay long enough to assist in hiring and training her

11  replacement. Ms. Weber agreed to do so. In order to have an orderly transition, AOP retained the

12  services of Peter DiGiammarino to negotiate a plan of separation.  Negotiations resulted in a document

13  entitled "Heads of Agreement."  **Exhibit 6** is a true and correct copy of the Heads of Agreement. [3]

14      26.     Under this Agreement, Ms. Weber would be given an opportunity to do a cashless sale

15  of her stock options in the event that Alleghany conducted a second round of funding. The agreement

16  also provided that Ms. Weber would be taking a three-month sabbatical after she had completed

17  training her replacements, and would thereafter leave AOP.  The search for the replacement was

18  lengthy, and the sabbatical began in October 2011.

19      27.      In August 2011, Ms. Weber was approached by Paul DiGiammarino, president, and

20  Richard Schwartz, COO, and asked if she would agree to stay. They stated that they did not wish for

21  someone with her expertise and knowledge to leave the company. If she agreed, Ms. Weber would be

22  able to take the planned sabbatical and return to work January 1 with new responsibilities. In order to

23  induce her to stay, Ms. Milone agreed to pay Ms. Weber $300,000 at the time of any initial placement

24  offering, as long as Ms. Weber was still an employee of the company. This new agreement was signed

25  the first week of September 2011 ("September Agreement").

26  [2] The exhibits to this Complaint have, at various times, been marked "confidential" by AOP or AOP Founders and Plaintiff
    believes, therefore, that one or more Defendants may request a protective order in this case by which these documents may

27  be submitted under seal. Accordingly, to allow Defendants the opportunity to make such a request, Plaintiff submits this
    pleading without exhibits, and will supplement its filing according to the terms of a protective order, if any, entered in this

28  matter.
    [3] *Ibid.*

**Computerlaw
Group LLP**
computerlaw.com

28.     In November, during her sabbatical, Ms. Weber received an e-mail request that Ms. Weber sign a "release". The release did not include any of the terms from either the Heads of Agreement or the September Agreement.  At this time Ms. Weber asked when Alleghany would be closing the second round of funding. Paul DiGiammarino advised Ms. Weber that Alleghany had decided not to do a second round and that the company was looking for other investment sources.

29.     During November and December 2011, Ms. Weber continued to discuss the terms of the proposed release with Monica Winghart, General Counsel for AOP.  The September Agreement provided that Richard Schwartz and Ms. Weber were to negotiate the range of responsibilities for which Ms. Weber would be responsible upon her return to AOP on January 2, 2012. Although during the final week of December 2011, it appeared that the parties had agreed upon the terms, Ms. Weber received a letter from AOP terminating her employment as of December 31, 2011.

30.     On information and belief, that date was selected because the final third of Ms. Weber's options were to invest on January 1, 2012.  In February 2012 there was a public announcement issued by Article One that Alleghany had completed a second round of funding for the company. This was directly contrary to the information that Paul DiGiammarino had provided in November.

31.     At the time Ms. Weber's employment was terminated on December 31, 2011, at least $200,000 of Ms. Weber's total salary remained unpaid.  AOP failed to pay this amount as required by New York Labor Code section 191(3), which sets a statutory deadline for timely payment not later than one month after her termination, according to the contractual pay period in the Employment Agreement.

32.     In January 2012, Ms. Weber filed a demand for arbitration of her employment claims against defendants. These claims were dismissed from the arbitration by Order of the Tribunal on September 21, 2012. A true and correct copy of this Order is attached as **Exhibit 7.**[4]

//

//

---

[4] The exhibits to this Complaint have, at various times, been marked "confidential" by AOP or AOP Founders and Plaintiff believes, therefore, that one or more Defendants may request a protective order in this case by which these documents may be submitted under seal. Accordingly, to allow Defendants the opportunity to make such a request, Plaintiff submits this pleading without exhibits, and will supplement its filing according to the terms of a protective order, if any, entered in this matter.

### FIRST CLAIM FOR RELIEF - SECURITIES FRAUD
**Against Article One Partners Holdings, LLC, AOP Founders, LLC,
Cheryl Milone, SYW Private Investment LLC and Alleghany Capital Corp.**

33.     Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-32.

34.     Ms. Weber is a purchaser of securities under section 10(b) of Securities Exchange Act of 1934 because she has entered into various contracts with AOP, AOP Founders, and Cheryl Milone to invest in AOP and AOP Founders.

35.     AOP, AOP Founders, and Ms. Milone engaged in a fraudulent scheme to misrepresent or conceal material facts in connection with Ms. Weber's investment in AOP and AOP Founders and to induce Ms. Weber to purchase the stock of AOP and AOP Founders, including misrepresenting the value of the investment Ms. Weber made in AOP and AOP Founders by making statements to Ms. Weber which included (i) false promises in Spring of 2008 by Ms. Milone that if Ms. Weber joined the company as a founder, she would receive at least a 1% ownership interest in the company; (ii) written statements on December 21, 2008 that Ms. Weber was granted an additional 100,000 shares in the company in exchange for her work with the company; (iii) additional statements in February 2009 that the company required an immediate investment of $50,000 from Ms. Weber to avoid bankruptcy; (iv) statements asserting that with the value of this $50,000 investment, Ms. Weber would double her 5.5% interest in the company, separate from the 100,000 shares from December 21, 2008; (v) continued promises that the LLC would be converted to a corporation; (vi) repeated representations that Ms. Weber would be provided with stock certificates for these shares; and (vii) representations to Ms. Weber in Summer 2009 that in order to obtain financing for the company from SYW Private Investment LLC ("SYW"), Ms. Weber would have to convert her ownership to "stock options," and that unless she did so, there would be no way to close the transaction and save the company.

36.     By making these false statements and misrepresentations of material facts, AOP, AOP Founders, and Ms. Milone acted willfully and with the deliberate intent to induce Ms. Weber to invest in AOP and AOP Founders.

37.     Ms. Weber relied upon these misstatements and omissions of material fact in making her decision to invest in AOP and AOP Founders, and as a result was damaged and harmed when AOP and AOP Founders failed to make the promised conversion into a corporate entity, failed to issue stock

1  certificates for her promised ownership interest in this entity, and repudiated Ms. Weber's ownership

2  interest in AOP and AOP Founders limited liability companies.

### SECOND CLAIM FOR RELIEF - CONSTRUCTIVE FRAUD
**Against Cheryl Milone**

3
4      38.    Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-37.

5      39.    By virtue of Ms. Milone's position as managing member of AOP and AOP Founders,

6  the relationship between Ms. Milone and Ms. Weber was fiduciary in nature. Ms. Milone thereby owed

7  Ms. Weber the fiduciary duties of loyalty and care, and the obligation to conduct their business in good

8  faith and fair dealing. Because Ms. Weber's confidence in Ms. Milone's integrity caused Ms. Weber

9  to entrust Ms. Milone with money and resources invested in AOP and AOP Founders at Ms. Milone's

10  behest, a confidential relationship existed at all times herein mentioned between Ms. Weber and Ms.

11  Milone.

12      40.    Ms. Milone breached her fiduciary duties to Ms. Weber in numerous ways, including,

13  but not limited to: (i) failing and refusing, after repeatedly promising that Ms. Weber would join AOP

14  as a founder, officer and investor, to acknowledge and confirm Ms. Weber's ownership in AOP and

15  AOP Founders; (ii) refusing and failing to provide an accounting to Ms. Weber of the valuation of

16  AOP and AOP Founders or to allow Ms. Weber access to the books and records of AOP or AOP

17  Founders; (iii) refusing and failing to properly document Ms. Weber's ownership interest in AOP and

18  AOP Founders; (iv) inducing Ms. Weber to invest money in, and to continue working for and on

19  behalf of AOP and AOP Founders without this documentation and without compensation for many

20  years by representing that Ms. Weber could trust Ms. Milone, that her ownership in and position with

21  the company was secure, and that Ms. Weber would receive value for her contributions to the company

22  in the form of properly documented and valued stock or other equity; and (v) entering into funding

23  agreements with SYW and Alleghany while failing to protect Ms. Weber's interests or in a manner that

24  served the best interests of Ms. Weber, but which were, in fact, self-dealing transactions which put the

25  interests of Ms. Milone, SYW and Allegany ahead of Ms. Weber's.

26      41.    Ms. Weber placed confidence in and relied on Ms. Milone until Ms. Weber realized the

27  dishonest and wrongful practices of Ms. Milone. Until that time, Ms. Weber had reasonably relied on

28  Ms. Milone's representations of honesty and integrity.

1  42.    As a proximate result of Ms. Milone's constructive fraud, Ms. Weber has suffered

2  damages in an amount to be proven at trial.

3  43.    In doing the acts alleged herein, Ms. Milone acted with oppression, fraud and malice,

4  and Ms. Weber is entitled to punitive damages.

**THIRD CLAIM FOR RELIEF - DECEIT**
**Against Article One Partners Holdings, LLC, AOP Founders, LLC,**
**SYW Private Investment LLC, Alleghany Capital Corp., and Cheryl Milone**

7  44.    Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-43.

8  45.    Between 2007 and 2011, Ms. Milone, AOP and AOP Founders, through their managing

9  member Ms. Milone and other agents, affirmatively misrepresented the value of the ownership interest

10 in AOP and AOP Founders which Ms. Weber would obtain in exchange for capital investment and the

11 investment of her time and resources as a founder, officer and employee of the companies, and actively

12 concealed or suppressed pertinent facts to prevent Ms. Weber from learning the truth about how the

13 form, percentage, and value of her ownership interest would be affected by the funding agreements and

14 transactions between AOP and AOP Founders, on the one hand, and other investors, including SYW

15 and Alleghany, on the other.

16 46.    As alleged above, these misrepresentations and concealments included (i) false

17 promises in Spring of 2008 by Ms. Milone that if Ms. Weber joined the company as a founder, she

18 would receive a 1% ownership interest in the company; (ii) written statements on December 21, 2008

19 that Ms. Weber was granted an additional 100,000 shares in the company in exchange for her work

20 with the company; (iii) additional statements in February 2009 that the company required an

21 immediate investment of $50,000 from Ms. Weber to avoid bankruptcy; (iv) asserting that with the

22 value of this $50,000 investment, Ms. Weber would double her 5.5% interest in the company, separate

23 from the 100,000 shares from December 21, 2008; (v) continually promising that the LLC would be

24 converted to a corporation; (vi) repeatedly representing Ms. Weber would be provided with stock

25 certificates for these shares; and (vii) representing to Ms. Weber in Summer 2009 that in order to

26 obtain financing for the company from SYW, Ms. Weber would have to convert her ownership to

27 "stock options," and that unless she did so, there would be no way to close the transaction and save the

28 company.

47.     Defendants AOP, AOP Founders and Ms. Milone knew of the materiality and falsity of these nondisclosures, concealments and misrepresentations. Their actions and inactions were taken with intent to induce reliance thereon by Ms. Weber, benefitting Defendants at her expense.

48.     Ms. Weber reasonably relied upon these nondisclosures, concealments and misrepresentations and was induce to invest money in, and to continue working for and on behalf of AOP and AOP Founders, without the promised documentation and without compensation for many years.

49.     Defendants' conduct was a substantial factor in inducing Ms. Weber to rely upon their false statements, misrepresentations and concealments. Ms. Weber does not have her rightful and proper ownership interest in AOP and AOP Founders,  and suffered damages in an amount to be proven at trial, which includes, but is not limited to, the value of this ownership interest and the amount of funds and resources invested by Ms. Weber in AOP and AOP Founders, in addition to any and all expenses incurred by Plaintiff in attempting to account for and recover this interest wrongfully denied her.

50.     By their actions and conduct, Defendants are jointly and severally liable for damages suffered by Ms. Weber due to Defendants' deceitful acts, in an amount to be determined at trial.

51.     The wrongful conduct of Defendants was egregious and carried out with willful and conscious disregard of Ms. Weber's rights, and was hence oppressive and malicious.  As a result, Ms. Weber is entitled to punitive damages from Defendants.

### FOURTH CLAIM FOR RELIEF - NEGLIGENT MISREPRESENTATION
### Against Article One Partners Holdings, LLC, AOP Founders, LLC,
### SYW Private Investment LLC, Alleghany Capital Corp., and Cheryl Milone

52.     Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-51.

53.     Between 2007 and 2011, Ms. Milone, AOP and AOP Founders, through their managing member Ms. Milone and other agents, made representations as to past or existing material facts regarding the value and form of Ms. Weber's ownership interest in AOP and AOP Founders, including (i) statements in February 2009 that the company required an immediate investment of $50,000 from Ms. Weber to avoid bankruptcy; (ii) statements regarding the value of this $50,000 investment, to the effect that Ms. Weber would double her 5.5% interest in the company, separate from the 100,000 shares from December 21, 2008; and (iii) statements representing to Ms. Weber in Summer 2009 that

1    in order to obtain financing for the company from SYW, Ms. Weber would have to convert her

2    ownership to "stock options," and that unless she did so, there would be no way to close the transaction

3    and save the company.

4          54.      These representations were untrue as to the value of the ownership interest Ms. Weber

5    would obtain in exchange for her $50,000 and the financial condition of the company, but regardless of

6    her actual belief, Ms. Milone made these representations without any reasonable ground for believing

7    them to be true.

8          55.      These representations were made with intent to induce reliance thereon by Ms. Weber,

9    and to induce Ms. Weber to make the $50,000 investment in AOP and to sign agreements converting

10    her existing ownership into "stock options."

11          56.      Ms. Weber was unaware of the falsity of these representations, and acted in reliance

12    upon the truth of these representations and was justified in relying upon these representations.

13          57.      Ms. Weber reasonably relied upon these nondisclosures, concealments and

14    misrepresentations and was induced to invest money in, and to continue working for and on behalf of

15    AOP and AOP Founders, without the promised documentation and without compensation for many

16    years.

17          58.      As a result of her reliance upon the truth of the representations, Ms. Weber sustained

18    damages in an amount to be proven at trial, but which includes, but is not limited to, the value of this

19    ownership interest and the amount of funds and resources invested by Ms. Weber in AOP and AOP

20    Founders, in addition to any and all expenses incurred by Plaintiff in attempting to account for and

21    recover this interest wrongfully denied her.

22                    **FIFTH CLAIM FOR RELIEF - BREACH OF CONTRACT**

              **Against Article One Partners Holdings, LLC, AOP Founders, LLC,**

23    **SYW Private Investment LLC, Alleghany Capital Corp., and Cheryl Milone**

24          59.      Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-58.

25          60.      By 2011, Defendants Article One Partners Holdings, LLC, Article One Founders, LLC,

26    Cheryl Milone and Frances Weber, had entered into binding written and oral agreements, including the

27    written August 7, 2007 Subscription Agreement, the May 20, 2008 Operating Agreement of Article

28    One Partners, LLC, the December 23, 2008 grant of 100,000 shares in Article One Founders, LLC by

Ms. Milone, and the Second Amended and Restated Limited Liability Agreement of June 17, 2010 (the "<u>Agreements</u>"), to grant Ms. Weber a membership interest in AOP and AOP Founders, and an equivalent share of stock in the company when it converts to a corporation, in return for Ms. Weber's investments of money, time and work as a founder, employee and investor of AOP and AOP Founders.

61.     Ms. Weber complied with each of her requirements under the Agreements, including capital contributions of $50,000 and over four years of work for AOP as a founder, officer, and employee.

62.     Ms. Weber's performance of her obligations under the Agreements occurred in a timely manner and fulfilled her obligations under the Agreements.

63.     Despite Ms. Weber's performance and compliance with her obligations under the Agreements, Defendants AOP, AOP Founders and Cheryl Milone have materially breached the Agreement by, among other actions and omissions, (i) refusing to give Ms. Weber access to the records of AOP and AOP Founders; (ii) refusing to give Ms. Weber an accounting of the value of her ownership interest in AOP and AOP Founders; and (iii) refusing to grant Ms. Weber an ownership in AOP and AOP Founders and repudiating Ms. Weber's rightful ownership interests in AOP and AOP Founders.

64.     AOP, AOP Founders, and Cheryl Milone's actions and omissions in material breach of contract have harmed and damaged Ms. Weber in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF - BREACH OF FIDUCIARY DUTY
### Against Cheryl Milone

65.     Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-64.

66.     Defendant Milone, by virtue of her role as managing member of AOP and AOP Founders, owes Ms. Weber fiduciary duties of loyalty, care and good faith.

67.     Ms. Milone breached her fiduciary duties to Ms. Weber in numerous ways, including, but not limited to: (i) failing and refusing, after repeatedly promising that Ms. Weber would join AOP as a founder, officer and investor, to acknowledge and confirm Ms. Weber's ownership in AOP and AOP Founders; (ii) refusing and failing to provide an accounting to Ms. Weber of the valuation of AOP and AOP Founders or to allow Ms. Weber access to the books and records of AOP or AOP Founders;  (iii) refusing and failing to properly document Ms. Weber's ownership interest in AOP and AOP Founders; (iv) inducing Ms. Weber to invest money in, and to continue working for and on behalf of AOP and AOP Founders without this documentation and without compensation for many

years by representing that Ms. Weber could trust Ms. Milone, that Ms. Weber's ownership in and position with the company was secure, and that Ms. Weber would receive value for her contributions to the company in the form of properly documented and valued stock or other equity; and (v) entering into funding agreements with Defendants SYW Private Investment LLC and Alleghany Capital Corporation while failing to protect Ms. Weber's interests, or in a manner that served the best interests of Ms. Weber, but which were, in fact self-dealing transactions which put the interests of Ms. Milone, SYW and Allegany ahead of Ms. Weber's.

68. By intentionally committing the acts set forth in the preceding paragraph, Ms. Milone has breached the duty of care, loyalty, and good faith.

69. As a proximate result of Ms. Milone's breach of her duty of care, loyalty and good faith to Ms. Weber, Ms. Weber does not have her rightful and proper ownership interest in AOP and AOP Founders, and suffered damages in an amount to be proven at trial, but which includes, but is not limited to, the value of the ownership interest and the amount of funds and resources invested by Ms. Weber in AOP and AOP Founders, in addition to any and all expenses incurred by Plaintiff in attempting to account for and recover this interest wrongfully denied her.

70. In doing the acts alleged herein, Ms. Milone acted with oppression, fraud, and malice and Ms. Weber is entitled to punitive damages in an amount as authorized by law.

### SEVENTH CLAIM FOR RELIEF - VIOLATIONS OF NEW YORK LABOR CODE §191(3) Against Article One Partners Holdings, LLC.

71. Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-69.

72. AOP's failure to timely pay Ms. Weber her earned wages was willful because AOP knew it owed Ms. Weber these amounts.

73. Ms. Weber was an employee of AOP from September 1, 2007 to December 31, 2011, and as an employee, qualified for the protection of the New York Labor Law.

74. As an employee of AOP, from September 1, 2007, Ms. Weber was entitled to compensation for her services in an amount at least equal to the Federal Minimum Wage. From September 1, 2007 to December 31, 2011, AOP failed to pay such compensation. Ms. Weber was also entitled to a performance-based bonus, and, in the event of discharge other than for "cause" a

1   severance payment equal to three months' of salary. Ex. 1, §§2, 3, 7. Ms. Weber was employed by

2   AOP for four years, and entitled to, at minimum, $500,000 under the Employment Agreement.

3       75.     At the time Ms. Weber's employment was terminated on December 31, 2011, at least

4   $20,000 of the $500,000 remained unpaid. AOP failed to pay this amount as required by New York

5   Labor Code section 191(3), which sets a statutory deadline for timely payment no later than one month

6   after her termination, according to the contractual pay period in the Employment Agreement.

7       76.     Further, after Ms. Weber was terminated on December 31, 2011, under Ms. Weber's

8   Employment Agreement with AOP, Ms. Weber was entitled to severance payment of three months of

9   her base salary.  In violation of New York Labor Code section 191(3), AOP made no severance

10   payments as they became due on January 30, 2012, February 28, 2012, and March 31, 2012, and has

11   not made any severance payments at all.

12       77.     Moreover, AOP's failure to timely pay these wages was willful, in violation of New

13   York Labor code section 198, because it was knowing, deliberate and voluntary disregard of its

14   obligations under New York Labor Code.  Accordingly, Ms. Weber is entitled to a statutory award of

15   attorneys' fees and costs.

16            **EIGHTH CLAIM FOR RELIEF - BREACH OF WRITTEN EMPLOYMENT CONTRACT**
              **Against Article One Partners Holdings, LLC.**

17       78.     Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-77.

18       79.     Ms. Weber, as an employee of AOP, entered into a written compensation agreement on

19   January 1, 2009, under which Ms. Weber would receive compensation in the form of (a) base salary;

20   (b) stock options; and (c) bonuses.  Ex. 5.  Moreover, in the event AOP terminated Ms. Weber for

21   other than cause, Ms. Weber was entitled to severance in an amount not less than three months of her

22   then-current salary.

23       80.     Ms. Weber executed against the required objectives and adhered to all portions of the

24   contract required for these wages, stock options and bonuses.  Further, AOP terminated Ms. Weber

25   unilaterally and without cause on December 31, 2011, entitling Ms. Weber to the severance payment.

26       81.     AOP breached this contract by not paying and refusing to pay Ms. Weber the salary,

27   options, bonuses and severance promised and due to her.

28

82.     As a direct and proximate result of AOP's misconduct, Ms. Weber has been damaged in an amount to be determined, but which is believed to be in excess of $1,000,000.

**NINTH CLAIM FOR RELIEF – WRONGFUL TERMINATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993, 26 U.S.C. §2601 ET SEQ. Against Article One Partners Holdings, LLC, AOP Founders, LLC, and Cheryl Milone**

83.     Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-82.

84.     Ms. Weber is an eligible employee within the meaning of the term as used in the Family Medical Leave Act of 1993 because she accrued more than 1250 hours of service, and twelve months of consecutive service, as a paid employee of AOP prior to taking leave of absence for her own health and to serve as caregiver for her mother, who had a serious health condition.

85.     Ms. Weber is an eligible employee within the meaning of the term as used in the Family Medical Leave Act of 1993 because AOP employed 50 or more employees at her worksite at the company's office or within 75 miles of her worksite, although it attempts to avoid this and other statutory protections for its workers by misclassifying workers as independent contractors while they are in fact employees (the "research workers").  The research workers  AOP misclassifies as "independent contractors" are employees because

(a) AOP controls the compensation of the research workers through its feedback on the documents submitted by the research workers: AOP maintains close supervisory contact with the research workers, advising them on the quality of the research submitted as well as making suggestions and requests to enhance and further develop the collection of documents sent to AOP by the research workers. This feedback and supervision impacts the compensation paid by AOP to these research workers through a system of points which accumulate through long-term participation as well as the monetary compensation paid for piece-work;

(b) AOP reserves the right to set and control the system of points and compensation at its own discretion; including assessing the research performed by each research worker and assigning each worker a "value" based on the overall quality of their research work. The assessed value assigned by AOP determines the amount and level of compensation for the research worker;

(c) AOP pays compensation annually to its research workers based on the points accumulated;

**Computerlaw Group LLP** computerlaw.com

(d) AOP sets the terms for how and when any work is submitted, including when projects are posted and whether any extensions are granted, and the number of documents research workers are permitted to submit;

(e) The researchers' work in performing the prior art searches is vital—indispensable— to AOP's business; in fact, they perform the core function of AOP's business model, which is to produce crowd-sourced prior art searches on the inventions in patents and patent applications;

(f) AOP exercises managerial control over the work performed and turned in by the researchers:

   i.   Prior to being employed on any research project, each research worker must agree to certain conditions and terms including, but not limited to, terms regarding confidentiality and potential conflicts of interest;

   ii.   AOP sets the number of submissions a research worker may submit for each project, and the times within which work and submissions can occur;

   iii.   AOP continually reviews the documents submitted by the research workers and periodically sends the research workers guidance on potential research avenues including specific follow-up questions and directions, and suggestions for improving research submissions;

   iv.   AOP communicates both indirectly through newsletters as well as directly by email with research questions, directions and follow-up suggestions;

   v.   AOP maintains records of all submissions by each research worker and uses those records to determine and control amounts and levels of compensation for future work projects ("AOP Researcher Work Records");

   vi.   AOP uses the AOP Researcher Work Records to set the conditions and limitations on how each research worker works on each research project.

   vii.   AOP uses the AOP Researcher Work Records to permit and restrict research worker participation, and retains the right to prohibit specific persons from participating in their research projects; and

   viii.   upon information and belief, AOP offers certain guaranteed payment work to an AOP-selected category of research workers;

Computerlaw
Group LLP
computerlaw.com

(g)  the company actively promoted the fact that AOP has numerous research workers who worked exclusively or predominately through AOP and whose sole annual compensation is earned through AOP; and

(h)  On information and belief, AOP guarantees payment to a selected sub-category of research workers.

86.    Ms. Weber is an eligible employee within the meaning of the term as used in the Family Medical Leave Act of 1993 because she was not among the top 10% of employees in terms of compensation during her time working at AOP.

87.    AOP wrongfully demoted and then terminated Ms. Weber, citing her leave of absence as a reason for doing so, first stripping her of her title and responsibilities which she held prior to her leave of absence, reducing her compensation and benefits, and then, ultimately firing her.

88.    This demotion and termination was in direct violation of the protections of the Family Medical Leave Act.

89.    Ms. Weber suffered damages including loss of benefits and other compensation, loss of position and the prerequisites and prestige within the company connected with that position; she suffered further damages attendant on her loss of income, including the ability to provide for her parents and herself, and to meet her financial obligations.  These damages continue to accrue.

90.    Moreover, AOP's actions were willful, in violation of Family Medical Leave Act, because they were knowing, deliberate and voluntary disregard of its obligations under the Family Medical Leave Act.  Accordingly, Ms. Weber is entitled to punitive damages and an award of statutory award of attorneys' fees and costs, as allowed by the Family Medical Leave Act.

**TENTH CLAIM FOR RELIEF – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**Against Article One Partners Holdings, LLC,**
**AOP Founders, LLC, and Cheryl Milone**

91.    Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-90.

92.    Ms. Weber, as employee of Defendant AOP, entered into a written compensation agreement in June 2010, under which Ms. Weber would receive cash compensation in the form of a base salary, and bonuses.  Moreover, in the event AOP terminated Ms. Weber for other than cause, Ms. Weber was entitled to severance in an amount not less than three months of her then-current salary.

93.     Ms. Weber executed against the required objectives and adhered to all portions of the contract required for these wages, options and bonuses.  Further, AOP terminated Ms. Weber unilaterally and without cause on December 31, 2011, entitling Ms. Weber to the severance payment.

94.     AOP had an obligation and duty, under New York law, to act in good faith and deal fairly with Ms. Weber.  Instead, AOP refused to pay Ms. Weber her earned base salary, equity, bonuses and severance payments, acting in bad faith and dealing unfairly with Ms. Weber.

95.     As a direct and proximate result of AOP's misconduct, Ms. Weber has been damaged in an amount to be determined at trial but which is believed to be in excess of $1,000,000.

### ELEVENTH CLAIM FOR RELIEF – AGE DISCRIMINATION
### Against Article One Partners Holdings, LLC

96.     Ms. Weber repeats and incorporates by reference the allegations in paragraphs 1-95.

97.     AOP is an employer and it was the employer of Ms. Weber.

98.     Ms. Weber was an employee of AOP as set forth above and qualified by education, training, and experience for her position at AOP.

99.     On December 31, 2011, AOP terminated the employment of Ms. Weber.

100.    Ms. Weber is informed and believes and on that basis alleges that at least some motivation for this wrongful termination was a result of her being greater than 55 years old and that Ms. Weber's duties and responsibilities were transferred to a person or persons under 55 years old, at a lower salary than Ms. Weber was promised.

101.    Ms. Weber has suffered harm in an amount to be determined as a result of losing gainful employment, a direct result of the unlawful termination stemming from age discrimination in violation of Age Discrimination in Employment Act, 29 U.S.C. §631 et seq. and New York Human Rights Law §297.

102.    Defendant acted with malice, oppression, and reckless disregard of Ms. Weber's rights and it engaged in bad faith conduct.  Ms. Weber seeks punitive damages for the willful, wanton, reckless and other malicious, oppressive, and otherwise wrongful acts of Defendants and each of them. Ms. Weber is further entitled to attorney fees and costs in accordance with applicable law.

//

//

1

**PRAYER FOR RELIEF**

2  Ms. Weber prays for judgment on these claims for relief as follows:

3  A.  For damages in an amount to be proven at trial, but in an amount believed to be not less

4  than $1,000,000;

5  B.  For punitive and exemplary damages;

6  C.  For an accounting;

7  D.  For judicial declaration of her rights and interests as an investor and owner in AOP and

8  AOP Founders;

9  E.  For costs of suit and prejudgment interest on all damages awarded;

10  F.  For such other and further relief as is found proper.

11

12  Dated: November 27, 2013

13

14  By:

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

COMPUTERLAW GROUP, LLP

Jack Russo, Esq.

Attorney for Plaintiff
FRANCES WEBER